TH:VAZ
F. #2021R01086

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
*   MAY 25, 2023   *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

JASMINE FOX,
████████████████████████,
MANEKA DUFFY,
   also known as "Neka,"
DOMINIQUE FLYNN,
   also known as "Nique," and
LOREN PARKER JR.,
   also known as "Lashawn Parker"
   and "Miric,"

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

INDICTMENT

Cr. No. **23-CR-227**
(T. 18, U.S.C., §§ 982(a)(2), 982(b)(1),
1349 and 3551 et seq.; T. 21, U.S.C.,
§ 853(p))

**Judge Nicholas G. Garaufis**
**Magistrate Judge Marcia M. Henry**

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.   The Defendants and Relevant Entities

     1.   The defendant JASMINE FOX was a resident of Atlanta, Georgia. FOX was a flight attendant employed by Airline 1, an entity the identity of which is known to the Grand Jury.

     2.   The defendant ████████████████████████ was a resident of ████████████.

3. The defendant MANEKA DUFFY, also known as "Neka," was a resident of Fort Valley, Georgia.

4. The defendant DOMINIQUE FLYNN, also known as "Nique," was a resident of Key West, Florida.

5. The defendant LOREN PARKER JR., also known as "Lashawn Parker" and "Miric," was a resident of Atlanta, Georgia. PARKER was the defendant JASMINE FOX's husband and a former employee of Airline 1 who worked at LaGuardia Airport ("LGA").

II. The Payment Protection Program

6. Enacted in March 2020, the Coronavirus Aid, Relief and Economic Security ("CARES") Act was a federal law designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects of the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP").

7. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and to make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business, through its authorized representative, was required to state, among other things, its (a) average monthly payroll expenses, and (b) number of employees. These figures were used to calculate the amount of money the

small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

8. The PPP was overseen by the Small Business Administration ("SBA"), which had authority over all PPP loans. Individual PPP loans, however, were issued by approved private lenders, such as participating financial institutions and credit unions (the "Lenders"). The Lenders received and processed PPP applications and supporting documentation, and made loans using the Lenders' own funds.

9. Upon approval of a PPP loan application, a Lender funded a PPP loan, which was 100 percent guaranteed by the SBA. Data from the PPP loan application, including information about the borrower, the total amount of the loan and the listed number of employees, was transmitted by the applicable Lender to the SBA in the course of processing the loan.

10. PPP loan proceeds were permitted to be used by a borrower on specified expenses, such as payroll costs, interest on mortgages, rent and utilities. The PPP allowed the interest and principal on a PPP loan to be entirely forgiven if the borrower spent the loan proceeds on the specified expenses within a designated period of time and used a certain amount of the PPP loan proceeds on payroll expenses.

III. The Fraudulent Scheme

11. Following the enactment of the CARES Act, the defendants JASMINE FOX, ████████████████████, MANEKA DUFFY, also known as "Neka," DOMINIQUE FLYNN, also known as "Nique," and LOREN PARKER JR., also known as "Lashawn Parker" and "Miric," together with others, orchestrated a scheme to submit

fraudulent PPP loan applications on behalf of borrowers who did not legitimately qualify for loans under the PPP program, in exchange for "commissions" taken from the loan proceeds.

12. The defendants JASMINE FOX and LOREN PARKER JR., also known as "Lashawn Parker" and "Miric," were ineligible to receive any PPP loan proceeds per the terms of the PPP.

13. As part of the scheme, the defendants JASMINE FOX, MANEKA DUFFY, also known as "Neka," and LOREN PARKER JR., also known as "Lashawn Parker" and "Miric," together with others, submitted and caused to be submitted to Lenders dozens of PPP loan applications on behalf of borrowers recruited to fraudulently apply for PPP loans. Those applications contained materially false representations. FOX, ███████, DUFFY, FLYNN and PARKER each recruited some of the borrowers. In addition, FOX, ███████████, DUFFY and PARKER personally prepared some of the PPP applications.

14. As part of the scheme, the defendants JASMINE FOX, ███████ ███████████, MANEKA DUFFY, also known as "Neka," DOMINIQUE FLYNN, also known as "Nique," and LOREN PARKER JR., also known as "Lashawn Parker" and "Miric," together with others, each created and obtained false tax documents, which were provided as support for the fraudulent PPP loan applications.

15. The scheme involved more than 90 fraudulent PPP applicants. The applicants resided in at least 12 states, including New York. Some of the applicants resided in Brooklyn, New York and Queens, New York. Some of the applicants were employees of Airline 1 and Airline 2, an entity the identity of which is known to the Grand Jury, who worked at LGA.

16. After the PPP applicants were recruited to join the scheme, the defendants JASMINE FOX, ███████████████, MANEKA DUFFY, also known as "Neka," and LOREN PARKER JR., also known as "Lashawn Parker" and "Miric," together with others, each helped the borrowers complete some of the PPP applications that contained fraudulent information.

17. For example, the defendants JASMINE FOX, ███████████ ███████, MANEKA DUFFY, also known as "Neka," and LOREN PARKER JR., also known as "Lashawn Parker" and "Miric," together with others, each helped borrowers complete some of the fraudulent PPP loan application documents, including the SBA Form 2483 PPP Borrower Application (the "2483 Forms"). The 2483 Forms required borrowers to state, among other things, their businesses' average monthly payroll and number of employees, and to certify that the PPP loan funds would be "used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule." FOX, ███████████, DUFFY and PARKER, together with others, each helped borrowers make false representations on 2483 Forms.

18. Under PPP loan program rules, borrowers generally were eligible to receive loans of up to 2.5 times their businesses' average monthly payroll. The defendants JASMINE FOX, ███████████████, MANEKA DUFFY, also known as "Neka," and LOREN PARKER JR., also known as "Lashawn Parker" and "Miric," together with others, each helped some of the borrowers maximize the loan amount for the borrowers' businesses, including by preparing false documents in support of the borrowers' PPP applications, including Internal Revenue Service Form 1040 Schedule C. In addition, FOX,

███████████, DUFFY and PARKER, together with the defendant DOMINIQUE FLYNN, also known as "Nique," and others, each included false tax documents in PPP applications in order to help borrowers obtain fraudulent PPP loans even though they knew the borrowers did not qualify.

19. The defendants JASMINE FOX, MANEKA DUFFY, also known as "Neka," and LOREN PARKER JR., also known as "Lashawn Parker" and "Miric," together with others, profited from the scheme. As part of recruiting the borrowers, FOX, DUFFY and PARKER told borrowers to provide a "commission" amount once the borrowers obtained the fraudulent PPP loans. The borrowers in fact paid such "commissions" to FOX, DUFFY and PARKER, who obtained thousands of dollars in cash and wire-transferred "commissions" from the PPP loan proceeds.

20. In total, in or about and between May 2020 and October 2021, both dates being approximate and inclusive, as a result of this fraudulent scheme, the SBA and the financial institutions administering the PPP wire-transferred sums totaling approximately $3.5 million from more than 120 PPP loans to bank accounts associated with the applicants used by the defendants. Wire transfers of the fraudulent PPP loan proceeds were directed to accounts in the Eastern District of New York and elsewhere.

WIRE FRAUD CONSPIRACY

21. The allegations contained in paragraphs one through 20 are realleged and incorporated as if fully set forth in this paragraph.

22. In or about and between May 2020 and October 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JASMINE FOX, ███████████████, MANEKA DUFFY, also

known as "Neka," DOMINIQUE FLYNN, also known as "Nique," and LOREN PARKER JR., also known as "Lashawn Parker" and "Miric," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the SBA, and to obtain money and property from the SBA by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate commerce one or more writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

23. The United States hereby gives notice to the defendants that, upon their conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), which requires any person convicted of such offense to forfeit any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offense.

24. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)(2) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

By Carolyn Pokorny, Assistant U.S. Attorney
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2021R01086
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

JASMINE FOX et al.,

Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 982(a)(2), 982(b)(1), 1349 and 3551 et seq.;
T. 21, U.S.C., § 853(p))

*A true bill.*

_____
*Foreperson*

Filed in open court this _____ day,

of _____ A.D. 20 _____

_____
*Clerk*

Bail, $ _____

_____

*Victor Zapana, Assistant U.S. Attorney (718) 254-7180*