UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,      : 23-cr-00227(NGG)-3
                               :
                               :
     - versus -                : U.S. Courthouse
                               : Brooklyn, New York
FOX, ET AL.,                   :
                               : July 12, 2023
               Defendants      : 11:32 a.m.
------------------------------X

        TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
         BEFORE THE HONORABLE RAMON E. REYES, JR.
              UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government:**         **Breon S. Peace, Esq.**
                               United States Attorney

                          BY:  **Victor A. Zapana, Jr., Esq.**
                               Assistant U.S. Attorney
                               271 Cadman Plaza East
                               Brooklyn, New York 11201

**For Def. Fox:**               **Deirdre von Dornum, Esq.**
                               Federal Defenders of New York
                               One Pierrepont Plaza, 16th Fl.
                               Brooklyn, NY 11201

**For Def. Duffy:**             **Morris J. Fodeman, Esq.**
                               **Derek Mong, Esq.**
                               Wilson Sonsini Goodrich
                                & Rosati PC
                               1301 Avenue of the Americas
                               New York, NY 10019

**For Def. Flynn:**             **John Wallenstein, Esq.**

**For Def. Parker:**            **Murray Singer, Esq.**


**Transcription Service:**      **Transcriptions Plus II, Inc.**
                               61 Beatrice Avenue
                               West Islip, New York 11795
                               RL.Transcriptions2@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

1          THE CLERK:  This is Criminal Cause for

2     Arraignment on the indictment, *USA v. Jasmine Fox, Maneka*

3     *Duffy, Dominique Flynn, and Loren Parker*.  The case

4     number is 23-cr-227.

5          May I have the parties state their name for the

6     record starting the government?

7          MR. ZAPANA:  Good morning, your Honor, and

8     everyone.  Victor Zapana for the United States.

9          THE CLERK:  Thank you.  And appearing for Ms.

10    Jasmine Fox?

11         MS. VON DORNUM:  Good morning, your Honor.

12    Deirdre von Dornum, Federal Defenders of New York for

13    Jasmine Fox.  Ms. Fox is present next to me.

14         THE CLERK:  Thank you.  Appearing for Ms.

15    Maneka Duffy?

16         MR. FODEMAN:  Hello, your Honor.  Good morning,

17    everyone.  Moe Fodeman and Derek Mong for the defendant

18    Maneka Duffy who is also present before the Court, court

19    appointed counsel.

20         And if it's all right with your Honor, I'd ask

21    that Mr. Mong be allowed to take the lead in today's

22    proceeding.

23         THE COURT:  That's fine.

24         THE CLERK:  Dominique Flynn?

25         MR. WALLENSTEIN:  Good morning, your Honor.

Proceedings

1  John Wallenstein for Mr. Flynn.  I represent him along

2  with Joshua Schiffer from Atlanta, Georgia and Robert

3  Wells from Syracuse, New York, but I'm the point man

4  today.  Mr. Flynn is present.

5           THE CLERK:  Thank you.  And lastly for Ms.

6  Parker, Lauren Parker?

7           MR. SINGER:  Good morning, your Honor.  Murray

8  Singer for Mr. Parker who is beside me.

9           THE CLERK:  Thank you very much.  Okay, judge.

10           THE COURT:  Good morning, everyone.  Ms. Fox,

11  Ms. Duffy, Mr. Flynn, and Mr. Parker, you're here today

12  because a grand jury has returned an indictment against

13  you in this district charging you with conspiracy to

14  commit wire fraud.

15           You have the right to remain silent.  You do

16  not have to make a statement to anyone.  If you start to

17  make a statement, you can stop at any time.  If you've

18  made statements in the past, you're not required to make

19  statements in the future.  Any statements that you make

20  though can and will be used against in your case except

21  for statements that you make to your attorneys.  Those

22  are privileged.  Do you understand that, Ms. Fox?

23           DEF. FOX:  Yes.

24           THE COURT:  Ms. Duffy?

25           DEF. DUFFY:  Yes.

Proceedings

1    THE COURT:  Mr. Flynn?

2    DEF. FLYNN:  Yes, sir.

3    THE COURT:  Mr. Parker?

4    DEF. PARKER:  Yes.

5    THE COURT:  You also have the right to be

6  represented by an attorney throughout your case.  Some of

7  the attorneys have been appointed by the Court to

8  represent you.

9    Mr. Flynn, I believe retained Mr. Wallenstein

10  to represent you.  If at some point in time you can no

11  longer afford to keep him and the other attorneys as your

12  attorney, you can ask the Court to appoint an attorney to

13  represent you and if you're eligible financially, the

14  Court will do that.  Do you understand?

15    DEF. FLYNN:  Yes, sir.

16    THE COURT:  Ms. Fox, have you received a copy

17  of the indictment?

18    DEF. FOX:  Yes.

19    THE COURT:  Ms. Duffy?

20    DEF. DUFFY:  Yes.

21    THE COURT:  Mr. Flynn?

22    DEF. FLYNN:  Yes, sir.

23    THE COURT:  Mr. Parker?

24    DEF. PARKER:  Yes.

25    THE COURT:  And have you discussed the charges

1  with your attorney, Ms. Fox?

2        DEF. FOX:  Yes.

3        THE COURT:  Do you understand the charges?

4        DEF. FOX:  Yes.

5        THE COURT:  Okay.  Ms. Duffy?

6        DEF. DUFFY:  Yes.

7        THE COURT:  Mr. Flynn?

8        DEF. FLYNN:  Yes, sir.

9        THE COURT:  Mr. Parker?

10       DEF. PARKER:  Yes.

11       THE COURT:  Does anyone want me to read the

12 indictment aloud?

13       ALL:  No.

14       THE COURT:  All right.  Ms. Fox, how do you

15 plead to the charges; guilty or not guilty?

16       DEF. FOX:  Not guilty.

17       THE COURT:  Ms. Duffy?

18       DEF. DUFFY:  Not guilty.

19       THE COURT:  Mr. Flynn?

20       DEF. FLYNN:  Not guilty.

21       THE COURT:  Mr. Parker?

22       DEF. PARKER:  Not guilty.

23       THE COURT:  Okay.  Pursuant to Federal Rule of

24 Criminal Procedure 5(f), I remind the prosecution of its

25 obligation under *Brady v. Maryland* and its progeny to

Proceedings

1  disclose to the defense all information known to the

2  prosecution whether admissible or not that is favorable

3  to the defendants and material either to guilt or to

4  punishment.  The prosecution must make good faith efforts

5  to disclose such information to the defense as soon as

6  reasonably possible.

7           I'll be entering a written order more fully

8  describing this obligation and possible consequences of

9  failing to meet it.  I direct the prosecution to review

10 and comply with that order.

11          Does the prosecution understand its obligations

12 and will it fulfill them?

13          MR. ZAPANA:  Yes, the government will.  Thank

14 you.

15          THE COURT:  You have a status conference with

16 Judge Garaufis at 2:30 today?

17          MS. VON DORNUM:  Yes, your Honor.

18          THE COURT:  So you might be seeking an

19 exclusion of time?

20          MS. VON DORNUM:  No, your Honor.

21          THE COURT:  All right.  Ms. Von Dornum is

22 speaking for all of you.

23          ATTORNEYS:  Yes.

24          THE COURT:  So I understand that there are

25 issues with some of the proposed bonds?

Proceedings

1    MS. VON DORNUM:  Yes, your Honor.  As to Ms.

2  Fox, we would object to some of the additional conditions

3  that Pretrial is seeking and I can specify which ones if

4  you like and my objections.

5    THE COURT:  Go ahead.

6    MS. VON DORNUM:  I believe of the defendants

7  may have different issues.

8    So Ms. Fox, as you know, was released ROR in

9  Nevada three weeks ago with no conditions, no reporting,

10  no travel restrictions.  She's already surrendered her

11  passport.

12    Pretrial here issued an addendum that has no

13  additional facts in it but they ask for nine additional

14  conditions to be imposed.

15    And we specifically object to condition two

16  which would restrict Ms. Fox's travel to Nevada and New

17  York City; to condition four, no contact with co-

18  defendants unless in the presence of counsel; and

19  condition six, that she undergo a mental health

20  evaluation.  And if you like, I could address each in

21  turn.

22    THE COURT:  Yes.

23    MS. VON DORNUM:  As to the travel restriction,

24  first of all, Ms. Fox is a full-time employee of Delta

25  Air Lines and works as a flight attendant on domestic

Proceedings

1  flights.  She is currently on maternity leave from that

2  job and its pending investigation by Delta.  They're

3  aware of the case.  But as of now she's still a full-time

4  employee, so obviously she would not be able to maintain

5  her employment if she can only fly between Nevada and New

6  York City.

7          In addition, her mother lives in Atlanta and

8  often cares for the children for extended periods, so she

9  definitely needs to be able to travel to Georgia.

10          But my primary objection is that in the

11  circumstances of this case where you have someone who

12  poses no risk of flight, she's stable, employed, has two

13  young children -- her only criminal record which oddly

14  our Pretrial found to be a danger but they did not in Las

15  Vegas, is a misdemeanor driving with a suspended license

16  when she was 20 years old on which she successfully

17  completed probation.  So I don't see that that poses any

18  danger nor certainly any risk of flight.

19          So I think that restricting her travel in these

20  circumstances is a greater than necessary restriction.

21  She is -- you know, we're consenting to her having a

22  reporting to Pretrial, I guess Nevada as courtesy

23  supervision.  So certainly she can inform them if she's

24  going to travel out of state.  But I think that imposing

25  such a travel restriction is greater than necessary where

Proceedings

1  you have someone on a fraud case with no criminal history

2  and total stability.

3          As to the no contact with co-defendants, you

4  know, I always think that we over-impose this condition.

5  But here we have a case where again, you have someone

6  without a real criminal history.  The co-defendants

7  include her cousin and her husband.  And I think this

8  condition, which I believe stemmed from the organized

9  crime area, presupposes that defendants will obstruct

10  justice or if they discuss their cases, if they talk to

11  each other at all, which simply I think is not feasible

12  in this case given that it's her husband and cousin.  So

13  I think at those three need to be able to speak to each

14  other.  They're also close friends with Mr. Flynn.  So I

15  don't think a condition that says no communication is

16  feasible.

17          But beyond that, I would object to the idea

18  that they can't discuss their case outside the presence

19  of counsel.  There's no evidence here of witness

20  tampering.  There's no hint of obstruction.  They are

21  intelligent people.  And I don't see why they shouldn't

22  be permitted to discuss the case outside my presence.

23          For example, if Mr. Zapana produces hard drives

24  and discovery to Mr. Parker and Ms. Fox and they're at

25  home each looking on their computer, I don't see that

1  them saying to each other, putting aside marital

2  privilege which Mr. Zapana would have to deal with, I

3  don't see that them saying to each other, "I don't know

4  who this client is, do you?" has any negative impact on

5  the case and in fact will assist in their defense.  And I

6  don't think this type of condition is narrowly tailored

7  to this type of case and these defendants and I don't

8  think it should be imposed given the First Amendment

9  ramifications as well as Sixth Amendment ramifications on

10  a sort of gut instinct basis.  And obviously it was not

11  imposed in Nevada.

12           Finally, as to the mental health evaluation, I

13  don't see that that's warranted here.  I see that Ms. Fox

14  reported that as a child she was evaluated for anxiety

15  and that in 2019 she took a sleeping aid after a work

16  incident.  That doesn't seem to me to rise to a court-

17  ordered mental health evaluation.  She is currently in

18  therapy and has her own therapist.  And certainly since

19  she's reporting to Pretrial, if they observe that she

20  seems depressed or having issues, they can seek that

21  condition from the Court.  But that is quite an

22  intrusion, a Court-ordered mental health evaluation and I

23  don't see that it's warranted on this record.

24           THE COURT:  You want to respond, Mr. Zapana?

25           MR. ZAPANA:  Of course, your Honor.  Going in

Proceedings

1 order of resistance, the government takes no position on

2 the mental health evaluation.

3          The government agrees that Georgia makes sense

4 in the travel restriction.  We do think travel

5 restrictions are important here and necessary because,

6 again, of the travel, of the flight risk, of the fact

7 that we're dealing with people who are on planes actively

8 all the time.  Part of the scheme came under LGA,

9 involves two different airlines.  This involves different

10 states, different actors.  They're communicating with

11 each other constantly during this scheme.  It involves a

12 large figure, many millions of dollars, 120 different

13 applicants.  These are the leaders and managers of the

14 scheme and are seen globally.

15          The travel restriction is a --

16          THE COURT:  I think the travel restriction is

17 easy if the concern is being able to go to Georgia to see

18 her mother.  And then if she starts flying again to go

19 for work, it could be simply travel restricted to New

20 York City, Nevada, Georgia, and elsewhere in relation to

21 work as a flight attendant.

22          MR. ZAPANA:  Your Honor, the government has no

23 objection to that.

24          MS. VON DORNUM:  That's fine, your Honor.

25          THE COURT:  All right.

Proceedings

1       MR. ZAPANA:  As for no contact, I just want to

2  make sure it's clear for the record what the provision

3  says as opposed -- it says no contact with co-defendants

4  unless in the presence of counsel with the exception of

5  Mr. Parker, a husband with whom she should not speak

6  about the case.  This is narrowly tailored.  This is a

7  fairly standard condition.  This is because in a

8  conspiracy case involving frauds, it's usually the case

9  there is concern that if they do start talking outside

10  the presence of counsel, they might start trying to link

11  up answers.  There's always that deep risk, especially

12  among conspirators.  That's why this is time and time

13  again a condition, a standard condition in conspiracy

14  cases generally, let alone fraud conspiracy cases.

15            In this case, I will say there is a ton of

16  scheme related communications and the evidence between

17  the husband and wife.  They are the leaders of the

18  scheme.  It is not I think in the interest of justice for

19  them to be sort of talking to each other about how the

20  case should proceed outside the presence of counsel.  I

21  think outside the presence of counsel is extremely

22  important there.  It reflects an important balance in

23  their need to strike a hearty defense.  And the risk is

24  the concern that might happen if the conspirators were

25  talking.

Proceedings

1          Again, also, this is an exceptional case, hence

2     the recommendation because they are husband and wife.

3     There are concerns of privilege, there are concerns of

4     intimacy and confidentiality.  Everyone understands that.

5     And that's why it's limited just to case-related

6     information.

7          So we think this is incredibly narrowly

8     tailored in the circumstances very consistent with what

9     your Honor has seen time and time again in cases, CJA and

10    Federal Defenders, and retained counsel with conspiracy

11    cases,

12          MS. VON DORNUM:  Your Honor, may I respond

13    briefly just as to that last point?

14          THE COURT:  Sure.

15          MS. VON DORNUM:  First of all, I at least am

16    not persuaded by the idea because it's always done it

17    should be done here given the individualized

18    determination you have to make.  But also as to just may

19    they speak to each other, forgetting about speaking about

20    the case, again, for example, Ms. Fox ran into her cousin

21    in the women's room and came out nervously can I say

22    hello to her?  It's just not feasible.  They need to be

23    able to communicate with each other as a general

24    principle about their family, about Christmas, about that

25    kind of thing.

Proceedings

1    So I think just as a starter, they should all

2    be allowed to communicate.  That's a separate question

3    from should they be allowed to communicate about the

4    case.  So I don't see -- Mr. Zapana says is narrowly

5    tailored that she can speak to her husband, but what

6    about her cousin and her close friend?

7    So I would ask the Court to order certainly

8    that they should be allowed to communicate with each

9    other on general subjects.

10    And I would also I guess query the idea that

11    there is something pernicious about people involved in a

12    case discussing their own case with each other.  It

13    presumes that in doing so they're not analyzing the

14    evidence, understanding the law, thinking of questions to

15    ask their lawyers, but instead inherently tampering,

16    lying, fixing a story.  And here we have people for whom

17    there's no indication that they would do that or have

18    done that.  And I believe Mr. Zapana will confirm that

19    Ms. Fox, upon her arrest in this case, made quite open

20    and honest statements inculpating herself and was in no

21    way denying making up stories quite to the contrary.  So

22    there's no basis as to her to think she would do that.

23    And I think defendants should be allowed to

24    work on their own cases.  The idea that only if Mr.

25    Singer and I are there with them will they have honest

Proceedings

1   discussions about what they did I think is, there's no

2   basis for it and it really limits their own ability to

3   help with their case.

4           And here, for example, Ms. Fox is in a much

5   better position to understand the documents than I am and

6   I think Mr. Parker is too.  She is trained in finances.

7   And I want her and her husband, if the Court allows of

8   course, to delve into it, to talk to each other, to ask

9   me all the questions.  And just like I would ask a

10  colleague, I don't see why she can't ask a colleague in a

11  case of this nature.  Obviously in other cases, other

12  defendants and other records, that's different.

13          But I think Mr. Zapana will have to confirm

14  that there is nothing in this defendant's history,

15  nothing in his discovery that shows any hint of

16  tampering, influencing testimony.  Nothing like that.

17  And you know, they took her computer two years ago and

18  started searching for this.  If she had wanted to tell

19  people to cook up stories upon arrest, she would have

20  done so and there's no hint of that.

21          THE COURT:  There's no objection to the

22  surrendering of firearms?

23          MS. VON DORNUM:  Yes.  It's already been

24  surrendered.  It was before this, but it's in the custody

25  of her mother in a locked box in Atlanta to which only

Proceedings

1 her mother has the key.

2          THE COURT:  How often does Ms. Fox see her

3 therapist?

4          DEF. FOX:  Once a month.

5          THE COURT:  In light of the fact that she's

6 seeing a therapist, I'm going to remove the requirement

7 of evaluation and treatment for mental health problems as

8 directed by Pretrial Services.

9          I am also going to remove the no contact

10 provision.  You've convinced me, Ms. von Dornum.

11          MS. VON DORNUM:  Thank you, your Honor.

12          THE COURT:  Which means that we will do it for

13 the other defendants as well.

14          MS. VON DORNUM:  Yes, your Honor.

15          THE COURT:  The other terms are -- well, there

16 is a difference between what you've given me and what

17 Pretrial has recommended.  You're asking for a personal

18 recognizance bond.  Pretrial Services --

19          MS. VON DORNUM:  My understanding is she was

20 ROR'd.  I'm sorry if I misspoke.

21          PRETRIAL OFFICER:  Your Honor, she was released

22 on her own recognizance.  We are asking that she -- when

23 she was released in Nevada, they did not impose any

24 pretrial supervision and the other conditions that was

25 written on the front page.  We're asking that she be

Proceedings

1  placed on supervision so that we can monitor her

2  adjustment to supervision.  We don't have that ability

3  right now.

4        THE COURT:  I was --

5        PRETRIAL OFFICER:  That's just for Ms. Fox.

6        THE COURT:  I was getting at the fact that

7  there's no surety on this and you recommended that there

8  be a surety.

9        PRETRIAL OFFICER:  No, I'm talking about for

10  Ms. Fox, that she be placed on Pretrial supervision.

11        THE COURT:  Oh no, I'm placing her on Pretrial

12  Services supervision.  It's a different issue.

13        MS. VON DORNUM:  Yes, your Honor.  I'm sorry.

14        THE COURT:  The report says surety, recommends

15  a surety.  The bond doesn't.

16        PRETRIAL OFFICER:  Right.  We did ask for --

17        THE COURT:  Proposed bond.

18        MS. VON DORNUM:  I apologize, your Honor.  I

19  didn't address that condition.  It's my understanding the

20  government is not seeking that.  We don't believe it's

21  necessary as her appearance here with no assistance from

22  anyone shows, as well as her entire life history.  So I

23  think that is greater than necessary.  And that's why in

24  Nevada where she was arrested she was released ROR.  I

25  agree with Ms. Lee that having Pretrial supervision is

Proceedings

1  helpful for someone who's in another state in particular,

2  and we have no objection to that condition or to the

3  random visit condition.

4          THE COURT:  Okay.  I'm going to put a $15,000

5  bond, no surety, Pretrial Services supervision, subject

6  to random home contacts, verification of employment,

7  reporting to Pretrial as directed, all that.

8          PRETRIAL OFFICER:  Yes, your Honor.

9          THE COURT:  Passport is already surrendered?

10          MS. VON DORNUM:  It's been surrendered in

11  Nevada and I believe Pretrial has confirmed that.

12          THE COURT:  Travel restrictions New York City,

13  Nevada, Georgia and elsewhere in relation to work as a

14  flight attendant, and surrendering of weapons to a

15  responsible party which has already been done.

16          MS. VON DORNUM:  Yes.

17          THE COURT:  Ms. Fox, do you understand those

18  conditions of your release?

19          DEF. FOX:  Yes.

20          THE COURT:  Okay.

21          MR. ZAPANA:  Your Honor, given your Honor's

22  views on uniformity of the bond, because Mr. Parker is

23  (indiscernible), had similar ROR, we would request the

24  same conditions (indiscernible).

25          PRETRIAL OFFICER:  Mr. Parker has other

Proceedings

1  conditions that were imposed by Nevada.  He has drug

2  testing.  His travel for him was to the continental

3  United States.  But he does not work as a flight

4  attendant.  So we have made our recommendation to New

5  York City and Nevada.  But Mr. Singer --

6          MR. SINGER:  We would ask that Georgia be

7  included in that as well, your Honor, as the children,

8  they're his children as well who are with his -- well, he

9  will travel to Georgia either to take or to pick up or to

10  visit the children and see his in-laws.

11          THE COURT:  Okay.

12          MR. SINGER:  See his own family, right?

13          THE COURT:  He also has testing, evaluation,

14  and treatment for substance abuse?

15          PRETRIAL OFFICER:  Yes.

16          THE COURT:  All right.  Mr. Parker's bond will

17  also be $15,000; Pretrial Services supervision; travel

18  restricted to New York City, Nevada, and Georgia; undergo

19  testing, evaluation, and treatment for substance abuse as

20  directed by Pretrial.

21          There's no issue with Mr. Parker's passport?

22          MR. SINGER:  No, it was surrendered.

23          PRETRIAL OFFICER:  It was surrendered.

24          THE COURT:  All right.  Can you give this to

25  Mr. Parker?

Proceedings

1          THE CLERK:  Yes, Judge.

2          THE COURT:  Do you understand those release

3    terms, Mr. Parker?

4          DEF. PARKER:  Yes.

5          THE COURT:  All right.  The bond amount's the

6    same for everyone.

7                    (Pause in proceedings)

8          THE CLERK:  So all defendants are 15,000,

9    Judge?

10         THE COURT:  Correct.

11         THE CLERK:  And the no contact with co-

12   defendants (indiscernible).

13         MS. VON DORNUM:  Need two more.

14         THE COURT:  Yes.  Ms. Duffy.  Mr. Mong, are

15   there any problems with the similar conditions?

16         MR. MONG:  We have no issues.

17         THE COURT:  No problems?  Travel restricted to

18   New York City, Georgia?

19         MR. MONG:  No issues, your Honor.

20         THE COURT:  In addition, it's recommended that

21   Ms. Duffy refrain from the excessive use of alcohol.

22         MR. MONG:  Your Honor, that is a condition that

23   was from the prior bond.

24         MR. FODEMAN:  Judge, my only issue with that is

25   what's excessive?  I mean --

Proceedings

1          MS. VON DORNUM:  I think there's a good

2    vagueness challenge there, your Honor.

3          PRETRIAL OFFICER:  Well, we didn't recommend

4    that condition so we ask that she -- the conditions that

5    are written on the report was report to Pretrial Services

6    supervision, travel restricted to Georgia and New York

7    City, surrender passport, no contacts with co-defendants,

8    surrender weapons to a responsible party, and refrain

9    from use of narcotic drugs.  That's what we were talking

10   about.

11         THE COURT:  Missing her -- oh here it is.  Is

12   there some indication of use?

13         MR. FODEMAN:  Not that we're aware of, your

14   Honor.

15         PRETRIAL OFFICER:  It's a standard condition

16   even on our bonds that no one use illicit substances.

17         MS. VON DORNUM:  Illicit in which state?

18         PRETRIAL OFFICER:  We're federal.  Doesn't

19   matter.  Sorry.  You want to bring that --

20         THE COURT:  No.  I'm not going to impose that

21   condition.

22         MR. MONG:  Thank you, your Honor.

23         THE COURT:  So Ms. Duffy's bond will be $15,000

24   as well, Pretrial Services supervision, travel

25   restrictions to New York City and Georgia, and she must

Proceedings

1  surrender any weapons to a responsible party.  She has a

2  licensed firearm?

3            DEF. DUFFY:  Yes.  I surrendered it as well as

4  my passport.

5            THE COURT:  Okay.  All right.  Looks like Ms.

6  Duffy has already signed this.

7            Okay.  And then that leaves Mr. Flynn.  The

8  only difference is requesting travel restrictions include

9  Long Island to see counsel.

10            MR. WALLENSTEIN:  Judge, Mr. Flynn is on active

11  duty in the Navy.  He lives in Key West.  So Southern

12  District of Florida, New York City, Long Island because

13  my office is in Nassau County, and also Georgia for

14  family and counsel purposes because Mr. Schiffer, who is

15  co-counsel, is in Atlanta.  And I would ask that he be

16  permitted to have New Jersey as a restriction as well for

17  family purposes.  When he travels appear to court, he

18  stays with his sister in New Jersey and flies into

19  Newark.  Mr. Zapana indicated he had no objection to

20  that.

21            THE COURT:  New Jersey, yes, that's fine.  He

22  also has a firearm?

23            MR. WALLENSTEIN:  That has been surrendered.

24            THE COURT:  Okay.  And no issue with the

25  passport?

Proceedings

1          MR. WALLENSTEIN:  Also surrendered.

2          THE COURT:  Okay.  All right.

3          DEF. FLYNN:  My passport card has been

4   surrendered.  I lost my passport.

5          THE COURT:  All right.  But you surrendered

6   your passport card?

7          DEF. FLYNN:  Yes, sir.

8          THE COURT:  All right.  So Mr. Flynn's bond

9   will be $15,000, Pretrial Services supervision, travel

10  restrictions to New York City, Long Island, New Jersey,

11  Southern District of Florida, and Georgia.

12         PRETRIAL OFFICER:  I thought you said you need

13  Northern District of New York too.

14         MR. WALLENSTEIN:  Oh, I'm sorry, Judge.

15  Northern District of New York as well.  Mr. Wells is in

16  Syracuse.  I don't know that that's going to come to pass

17  but --

18         THE COURT:  Why don't we just say New York

19  State?

20         MR. WALLENSTEIN:  Okay.  That'll work.

21         THE COURT:  Okay.

22         MR. WALLENSTEIN:  We don't want the western

23  district to be insulted.

24         THE COURT:  All right.  New York State, New

25  Jersey, Southern District of Florida, and Georgia, and

Proceedings

1  that's it.  And it looks like Mr. Flynn has already

2  signed the bond.  Do you understand your terms?

3          DEF. FLYNN:  Yes, sir.

4          THE COURT:  Okay.  I want to give each of you

5  additional warnings.

6          MR. SINGER:  Your Honor, before we do that,

7  could I raise one additional item with regard to Mr.

8  Parker's bond?

9          THE COURT:  Yes.

10          MR. SINGER:  He has a -- my office is also in

11  Nassau County so if we could include New York State?  He

12  also has a child in New Jersey, the New York City area,

13  but he has a child, another child, who lives in New

14  Jersey.  So if we can include New Jersey?  And he has

15  some family in Connecticut as well, cousins and an aunt.

16  So if the government has any position on including

17  Connecticut as well --

18          MR. ZAPANA:  Your Honor, the government has no

19  objection to New Jersey (inaudible).

20          MR. SINGER:  Thank you.  I'm sorry I didn't

21  raise it earlier.

22          THE COURT:  Okay.  The travel would be New York

23  State, New Jersey, Nevada, Georgia, and Connecticut.

24          All right.  So everyone, you know the terms of

25  your release.  They're on the bonds.  You'll be getting a

1  copy of the bond so you know exactly what your

2  requirements are.

3           In addition, it is a violation of the bond if

4  you commit any federal, state, or local crime when you're

5  out on release.  So you could be charged with other

6  crimes and you could also be -- your bond could be

7  revoked because of that.  So don't commit any crimes.

8           If you fail to come to Court when you're

9  supposed to, that is a violation of the bond, so you can

10  be detained on these charges until your trial.  You'd

11  also face a charge of bail jumping.  And if you're

12  convicted of bail jumping in addition to the underlying

13  charges, your sentences can be served consecutively, one

14  after the other.  So you absolutely positively must come

15  to court when you're supposed to.

16          If you attempt to influence the testimony of

17  any witness that may appear against you in your case,

18  that's a violation of the bond, so you can be detained on

19  these charges until your trial, and you'd also face a

20  charge of witness tampering.  And if you're convicted of

21  the underlying charges and witness tampering, your

22  sentences could be served consecutively.

23          So don't commit any crimes, come to court when

24  you're supposed to, and don't attempt to influence the

25  testimony of any witness that may appear against you.

Proceedings

1  Understood?

2          ALL DEFENDANTS:  Yes.

3          THE COURT:  All right.  Okay.  Anything else?

4          ALL ATTORNEYS:  No, your Honor.

5          THE COURT:  Thank you.

6          MR. ZAPANA:  Thank you, Judge.

7                  (Matter concluded)

8                      -oOo-

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **13th** day of **July**, 2023.

*Mary Greco*

Transcriptions Plus II, Inc.